## Craig v. Curd et al.

March 1, 1949.

J. A. Edge for appellant.

Frank S. Ginocchio for appellees.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

Appellees filed a special demurrer to appellant's petition, upon the ground that the petition as amended shows on its face that appellant did not have legal capacity to sue or to maintain the action. The special demurrer was sustained and the appellant declined to plead further. This is an appeal from the judgment of the lower court dismissing the petition.

This is an equitable action, instituted by the appellant as an informer under KRS 372.020 and 372.040. Appellant charged in her petition as amended that the appellees were at the time complained of operating an establishment in Lexington, Kentucky, for "gambling and laying wagers on the result of elections" and other purposes. Appellant alleged that W. H. Ledford bet $2,500 that Thomas E. Dewey would be elected president of the United States in 1944 and $60 that Dewey would carry the State of Kentucky by 50,000; that Mr. Dewey was not elected president and that he did not carry Kentucky and that appellees won and received $2,560; that Mr. Ledford demanded a return of this sum; that appellees refused to return the $2,560 or any part of it; that

Mr. Ledford sued for this amount, but later dismissed the suit without prejudice; that he did not prosecute the suit to a recovery or with due, or any, diligence; and that no creditor of W. H. Ledford brought a suit against appellees to recover the losses complained of in the petition. She prayed for a recovery of $7,680, or treble the amount won and received by appellees.

Appellant's action is grounded upon KRS 372.010, 372.020 and 372.040 as follows:

"372.010 Every contract, conveyance, transfer or assurance for the consideration, in whole or in part, of money, property or other thing won, lost or bet in any game, sport, pastime or wager, or for the consideration of money, property or other thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming, or wagering to a person then actually engaged in betting, gaming, or wagering, is void.

"372.020 If any person loses to another at one time, or within twenty-four hours, five dollars or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee or transferee of the winner. If the conveyance or transfer was of real estate, or the right thereto, in violation of KRS 372.010, the heirs of the loser may recover it back by action brought within two years after his death, unless it has passed to a purchaser in good faith for valuable consideration without notice.

"372.040 If the loser or his creditor does not, within six months after its payment or delivery to the winner, sue for the money or thing lost, and prosecute the suit to recovery with due diligence, any other person may sue the winner, and recover treble the value of the money or thing lost, if suit is brought within five years from the delivery or payment."

The lower court did not deliver an opinion, but from his order it appears that the parties were heard

orally and upon written briefs. The appellees maintain that:

"(1) The right of action to recover from the winner money or property lost on an election is not in the loser, but is in the Commonwealth alone.

"(2) Sections 372.020 and 372.040, KRS, do not authorize or empower the loser or any other person to maintain an action against the winner on account of money bet upon an election."

In Kentucky, the subject of betting upon an election, the penalty therefor, and the recovery of the amount bet and lost is covered by KRS 436.330, which is as follows:

"(1) Any person who wagers money or anything of value upon any election shall be fined one hundred dollars. The fine may be recovered in any county where the person violating this subsection may be found, or where the wager was made.

"(2) In addition to the fine, if the person winning receives the money or other thing so wagered, its value, or anything for it, the sum of money or the value of anything else so received shall be forfeited to the state, and may be recovered by any appropriate action in the name of the state before the circuit court or the presiding judge of the county court, wherever the person violating subsection (1) of this section may be found."

In Hickman v. Littlepage, 1834, 32 Ky. 344, 2 Dana 344, this court said:

"A bet on an election can not, with strict propriety of language, be denominated, 'a bet on any game, sport or pastime whatever.' And we are not inclined, in this respect at least, to give an enlarged or latitudinous import to the words 'game, sport, or pastime,' in the third section of the act of 1833; especially, as, by so doing, we should make it conflict with a radical provision of the act of 1828, against betting on elections, and which we do not believe that the legislature intended to abolish, or to clog.

"As then, this suit must be brought according to the act of 1828, and as, according to that act, Littlepage

could sue qui tam only, we are of the opinion, that his suit, as brought, in his own name and for his own benefit, can not be maintained and that consequently the instruction given by the circuit court to the jury was erroneous.''

In Love v. Harris, 1857, 57 Ky. 122, 18 B.Mon. 122, Love bet Harris and Elliott a horse valued at $140 against their note for that sum that Fillmore and Donelson, the ''Know Nothing'' party candidates, would receive the electoral votes of Kentucky for president and vice president at the presidential election in 1856. After the election, Harris and Elliott sold the horse and kept the money. Love, the loser, brought suit to recover. The circuit court sustained demurrers to the petition, dismissed Love's suit and he appealed from that judgment. This court again reviewed the law pertaining to the right of recovery of money bet and lost and again held that the general gaming statute, now KRS 372.020, does not embrace a bet or wager on an election; that such a bet is governed by another and separate statute, now KRS 436.330, Acts of 1854, saying:

''If it be conceded that the plantiff was entitled, under the law as it stood prior to the passage of this act, to recover the value of the thing lost by him, as alleged, it is very clear that such right is taken away by the latter act and vested in the Commonwealth for the use of the school fund, etc., and that the former law is to that extent repealed. It would certainly be an anomalous construction of the two statutes, to say the least, that a right of action is given to two different parties, at the same time, for the same thing, or for its value. Such could not have been the intention of the legislature.

''In view of the various provisions of the statutes referred to, we are satisfied that the right to sue for the value of the horse alleged to have been lost and won in this case was in the Commonwealth alone, and that the demurrer to the petition was properly sustained.''

At common law, money lost at gaming could not be recovered. Downs v. Quarles, 1821, 16 Ky. 489, Lit.Sel. Cas. 489, 12 Am.Dec. 337; 24 Am.Jur. 455, section 79. The legal right of any one to maintain an action against the winner of money bet and lost is wholly dependent

upon statutory authority. In accordance with the provisions of KRS 436.330, it is apparent from the petition that appellant did not have legal capacity to sue or to maintain this action, that power being in the Commonwealth alone.

The judgment of the circuit court is affirmed.